UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD GOULD and STARR GOULD,

                                     **Plaintiffs,**

-against-                                                         3:05-CV-374 (TJM/DEP)

**REXON INDUSTRIAL CORP., LTD., and
REXON AMERICA CORP.**, a wholly-owned
subsidiary of Rexon Industrial Corp., Inc.,

                                       **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.  INTRODUCTION**

      Plaintiffs Richard Gould and Starr Gould ("Plaintiffs") commenced this personal injury action against Defendants Rexon Industrial Corp, LTD. and Rexon America Corp. (collectively "Defendants" or "Rexon") asserting claims sounding in negligence, breach of express and implied warranties, strict products liability, and loss of consortium. Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, that motion is **granted** in part and **denied** in part.

1

## II. BACKGROUND

### A. Facts

The following facts are arrived at when viewing the evidence in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002).

On April 16, 2004, Plaintiff Richard Gould ("Plaintiff") was injured while using a Tradesman 10" Table Saw, Model No.8020B, Serial No. 00816, manufactured and distributed by Rexon. Compl. ¶ 9. Prior to the accident, Plaintiff had operated the table saw in question numerous times during the ten years he owned the saw. Def. Stat. of Material Facts ("D.S.M.F."), at ¶ 41. Plaintiff acknowledged having read the entire Owner's Manual that accompanied the table saw. D.S.M.F., ¶ 37. During the six months preceding the accident, Plaintiff used the table saw on a fairly regular basis. Id., at ¶ 43.

On the day of the accident, Plaintiff was cutting through a 3/4 inch piece of wood for the exterior of his house in order to square off a corner around the eaves. Id. at ¶ 10; R. Gould Dep. (Def. Ex. I) at p. 44. Plaintiff admitted that he was operating the table saw without its plastic safety guard attached to the saw. Id. ¶ 47. Plaintiff further admitted that he generally operated the saw with the blade guard removed, id., at ¶ 48, and that operating the table saw without its safety blade-guard enhanced the dangerous potential of the table saw. Id., at ¶51.

In addition to removing the saw's blade-guard, Plaintiff testified that at the time of the accident he was not using the "rip fence" to guide the wood because, in his judgment, "it would have not necessitated or worked out the cut." Gould Depo., at pp. 47-48. Plaintiff also did not use a miter gage or a push stick when performing the cut. Id., at p. 52. Instead, Plaintiff attempted to

2

perform the cut "freehand." D.S.M.F., at ¶ 62. A freehand operation means using only one's hands to support and guide the work piece towards the saw blade. While trimming the piece of wood freehand on April 16, 2004, the wood experienced a "kickback" causing it to jerk and causing Plaintiff's hand to strike the saw blade severing his thumb and three fingers of his right hand. D.M.S.F., at ¶ 12-13.

### B. Procedural History

Plaintiff commenced this action in federal court pursuant to 28 U.S.C. § 1332, asserting, *inter alia*, that Rexon negligently designed its product in that the plastic blade-guard was designed to be removed for certain functions of the machine, which Rexon knew or should have known created an unreasonable risk of harm to users. Amend. Compl. ¶ 26. Plaintiff also alleges that Defendants are liable in negligence and in strict products liability for failure to warn because the Owner's Manual accompanying the table saw contained inadequate and illegible warnings with respect to prohibiting freehand operations and the dangers of operation of the saw with the guard removed. Pls. Mem. Law, p. 4. Rexon filed the present motion for summary judgment arguing that the design defect an failure to warn claims must be dismissed because Plaintiff failed to establish that any of their acts or omissions caused Plaintiff's injuries. In support of its motion, Rexon points to the following facts that it alleges are undisputed: (1) Plaintiff was experienced in the use of power tools and had owned and operated the table saw in question for ten years prior to the accident; (2) Plaintiff was familiar with the Owner's Manual and acknowledged the increased potential danger that resulted in his removal of the safety blade-guard for the table saw; (3) Plaintiff could have used a push stick or the mitre gage to make the cut he was attempting to make at the time of the accident, but chose instead to perform the cut freehand; and (4) Plaintiff generally operated the saw with the

blade guard removed. See Def. Mem. Law., pp. 1-2. Rexon also argues that it cannot be liable for failure to warn because Plaintiff was aware of the danger associated with the manner in which he operated the saw on April 16, 2004 and any additional warning would have been superfluous. Id., at p. 6.

### III. STANDARD FOR SUMMARY JUDGMENT

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## IV. DISCUSSION

### A. **Defective Design**

In a strict product liability action a plaintiff may assert that the product is defective because of a mistake in manufacturing, because of improper design, or because of the manufacturer's failure to provide adequate warnings regarding use of the product. Fane v. Zimmer, Inc., 927 F.2d 124, 128 (2d Cir. 1997)(citing Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983)). When a design defect is asserted, the focus of the Court is on whether the product, as designed, was safe or presented an unreasonable risk of harm to the user. See Voss, 59 N.Y.2d at 107.  Whether a product is unreasonably dangerous generally is a question of fact depending on such issues as the potential for alternative designs, the costs of alternative designs, and the product's usefulness as designed. Urena v. Biro Mfg. Co., 114 F.3d 359, 364 (2d Cir. 1997)(citing Voss, 59 N.Y.2d at 107); Arbaiza v. Delta International Machinery Copr., 1998 WL 846773, at *5 (E.D.N.Y. Oct. 5, 1998).  Plaintiff has the burden of presenting evidence that the product, as designed, presented a substantial likelihood of harm and could have been designed more safely. Id.; see also Fane, 927 F.2d at 128. A manufacturer of a product may be held liable under a design defect theory where the product is designed to permit its use without its safety features. Ayala v. V & O Press Co., 126 A.D.2d 229, 233 (2nd Dep't 1987)(quoting Lopez v. Precision Papers, 67 N.Y.2d 871, 873 (2nd Dep't 1985), aff'd 107 A.D.2d 667, 484 N.Y.S.2d 585 (1985)).

Plaintiffs assert that Rexon's product could not reasonably be considered safe because it was purposefully designed to allow the plastic blade-guard to be removed, and because Rexon knew or should have known that the removal of this safety feature would create an unreasonable risk of harm to users.  Plaintiffs support their argument with expert testimony contending that injuries caused by

5

the freehand operation of stationary saws was foreseeable in the industry and the subject of government reports warning of injuries caused by the freehand operation of table saws. Meredith Aff., at ¶ 12. Plaintiffs also point to Rexon's Owner's Manual which states: "9. Use extra caution when the guard assembly is removed for resawing, dadoning, rabbeting or molding. Replace the guard as soon as the operation is completed." Def. Mem. Law., Ex. E, at p. 22.

Rexon does not dispute that the safety blade-guard on the table saw was removable. However, it counters that Plaintiff was aware of the danger inherent in operating table saws and that, through his own fault, he chose not to follow the instructions in the Owner's Manual warning against freehand operations and cautioning users of the need for extra care when the safety blade-guard was removed.[1]

---

[1]Defendants refer to the following warnings contained in the Owner's Manual:

<u>Safety Rules for Table Saws</u>

\*\*\*

4. Never perform any operation "free hand," which means using your hands only to support or guide the work piece. Always use either the fence or miter gage to position and guide the work.

<u>Basic Table Saw Operations Using the Miter Gage and Rip Fence</u>

1. Never make these cuts free hand because the blade could bind in the cut and cause kickback or cause your fingers or hand to slip into the blade.

There are two basic types of cuts: ripping and crosscutting. In general, cutting with the grain is ripping and cutting across the grain is crosscutting. However, with manmade materials this distinction is somewhat difficult to make [...] Neither ripping or crosscutting may be done safely freehand! Ripping requires the use of the rip fence and cross cutting uses the miter gage.

Caution

\*\*\*

3. Do not "free hand", Always use either the rip fence or the miter gage. Never use both.

Special Rules for Table Saws

\*\*\*

(continued...)

The facts, taken in the light most favorable to Plaintiffs, indicate that they have established a *prima facie* case of design defect. Plaintiffs provided evidence that Rexon purposefully manufactured its safety blade-guard to be removable, and Rexon admits that such safety feature was removable. The New York courts have held that "[w]here . . . a product is purposefully manufactured to permit its use without a key safety feature, it is for the jury to determine the scope of the product's intended purposes and whether the product was reasonably safe when placed in the stream of commerce." O'Bara v. Piekos, 161 A.D.2d 1118, 555 N.Y.S.2d 939, 940-41 (4th Dep't 1990)(citation omitted). Based on the evidence that the blade-guard on Rexon's table saw was removable, a jury could conclude that Rexon took an unreasonable risk in marketing the table saw without a permanently attached safety guard. Although not every product that is designed with a removable safety feature creates a question of fact for the jury to decide, see David v. Makita U.S.A., Inc., 233 A.D.2d 145, 649 N.Y.S.2d 149, 151 (1st Dep't 1996)(failure to permanently attach blade guard not a design defect where: 1) the blade guard had to be removable to permit non-through cuts; and 2) where the plaintiff had offered no expert testimony that the use of a removable blade guard rendered the saw not reasonably safe); Banks v. Makita U.S.A., Inc., 226 A.D.2d 659, 641 N.Y.S.2d 875, 877 (2nd Dep't 1996)(no design defect where the use of the power saw would be "limited and rendered useless for many of its intended functions if a blade guard was permanently attached"), it cannot be said, as matter of law on this record, that Rexon has established that its table saw was reasonably safe as designed. Because a jury could decide that Rexon's removable safety blade-guard created an unreasonably dangerous risk of harm to users, Plaintiffs

---

[1](...continued)
4. Never perform any operation "free hand," which means using your hands only to support or guide the work piece. Always use either the fence or miter gage to position and guide the work.

7

survive summary judgment on their design defect claim.

     **B.**    **Failure to Warn**

Plaintiff's failure to warn claims, although predicated alternatively upon theories of negligence and strict product liability, are essentially equivalent and the Court will treat them as such. Marshall, 150 F. Supp.2d 400, 405 (N.D.N.Y.)(citing Wolfgruber v. Upjohn Co., 72 A.D.2d 59, 62 423 N.Y.S.2d 95 (4th Dep't 1979), aff'd,52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980)). Under New York Law, a plaintiff may assert that a product is defective because the manufacturer failed to provide adequate warnings regarding the risks and dangers associated with the use, or foreseeable misuse, of its product. Urena v. Biro Mfg. Co., 114 F.3d 359, 365 (2d Cir. 1997); see also Voss v. Black & Decker Manufacturing Co., 59 N.Y.2d 102, 107 (1983)(citing Torrogrossa v. Towmotor Co., 44 N.Y.2d 709, 711 (1978)); see also Arbaiza, 1998 WL 846773, at *6; Hooter Deere v. Goodyear Tire and Rubber Co., 175 F.R.D. 157, 162; 197 U.S. Dist. LEXIS 12652, 10 (S.D.N.Y. 1997)(citing Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 297 (1992)).

The adequacy of the instruction or warning is generally a question of fact for the jury to decide, and "is not ordinarily susceptible to the drastic remedy of summary judgment." Urena, 114 F.3d at 366 (citing Beyrle v. Finneron, 199 A.D.2d 1022, 1023, 606 N.Y.S.2d 465, 466 (4th Dep't 1997)). However, "a manufacturer does not have a duty to warn of a danger associated with a reasonably foreseeable misuse when that danger is 'readily discernible' or the 'injured party is already aware of the specific hazard.'" Arbaiza, 1998 WL 846773, at *6 (quoting and citing Baptiste v. Northfield Foundry & Machine, 184 A.D.2d 841, 584 N.Y.S.2d 221, 223 (3rd Dep't 1992)(defendants had no duty to warn of the specific danger of using a table saw without a guard,

8

when the plaintiff had used the table saw for years, knew of another employee being injured on a table saw, and had attended a meeting where employees were told never to remove safety guards)). Although a manufacturer may have a duty to warn of dangers associated with the use of its product even after it is sold, such duty to warn does not apply to dangers that are "open and obvious of which the product user is actually aware or should be aware as a result of ordinary observation or as a matter of common sense." Felle v. W.W. Grainger, Inc., 302 A.D.2d 971; 755 N.Y.S.2d 535 (4th Dept. 2003)(citing Liriano, 92 N.Y.2d 232, 241-42 (1998); Carbone v. Alagna, 239 A.D.2d 454, 456; 658 N.Y.S.2d 48 (2nd Dep't 1997)). In other words, Plaintiff still has duty to both discover and avoid the injury in the exercise of reasonable and ordinary care. See Fane, 927 F.2d at 128. In this regard, the New York courts hold that if "'a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury,' the Court may, as a matter of law, grant summary judgment." Marshall, 150 F. Supp. at 405 (quoting Liriano, 92 N.Y.2d at 241).

    In the present case, the question is whether Rexon could have reasonably foreseen that Plaintiff would operate its product freehand and without its safety blade-guard. If Rexon could have reasonably foreseen that its product would still be used in this manner, then it had a duty to warn operators about the dangers of doing so. In support of their position that Defendants had a duty to warn of the damages associated with freehand operation when the blade-guard was removed from the table saw, Plaintiffs provided evidence, in the form of expert opinion, that the Owner's Manual did not adequately warn against the dangers of freehand and resawing/recutting operations. According to Plaintiffs' expert, a government study prepared by the Division of Hazard Analysis of the U.S. Consumer Product Safety Commission ("CPSC study"), which collected data on injuries

associated with stationary power saws, confirmed the magnitude of freehand injuries and should have imposed on the Defendants a duty to make "strong, unequivocal and prominent" post-sale warnings about free-hand operations. Pls. Mem. Law., Ex. 1 (Meredith Aff.) at ¶¶6, 9. Based on the CPSC study, Plaintiffs' expert opined that Defendants' "warnings were not effective in conveying the real danger of free-handing" and "did not adequately warn against resawing/recutting boards." Id. at ¶¶9-13. Plaintiffs' expert further stated that the "extremely small [size] print" of the warnings on the table saw do not emphasize the prohibition against "freehanding" because they are not "normally legible or noticeable as a warning." Id. ¶10.

Defendants counter with evidence that the Owner's Manual did warn against operating the table saw free-hand, warned against operation with the blade-guard removed, and warned that a kick back could cause the operator's fingers or hands to come into contact with the blade. See fn. 1. Defendants also refer to instructions requiring operators to use either a miter gage or a rip fence when guiding the work piece towards the saw's blade. Id. In addition, Defendants point out that Plaintiff was an experienced user of the table saw, was familiar with the warnings contained in the Owner's Manual, and acknowledged the increased potential for danger that resulted in his removal of the safety guard-blade. In response, Plaintiffs rely on their expert's opinion that Plaintiff "was not experienced and was unaware of the fact that performing table saw operations freehand or resawing a board freehand are known to be the most dangerous type of activity that can have the kind of catastrophic consequences of amputation that he sustained." Meredith Aff. at ¶ 3.

Plaintiff's expert cannot, of course, testify to what was in Plaintiff's mind or what he knew or did not know about the dangers of the operation of the table saw. Rather, that evidence, on this motion, comes from Plaintiff's testimony at depositions and indicates that Plaintiff had read the

warnings and was aware of the danger associated with "freehand" operations and with operations with the blade-guard removed. Further, in this Court's view, operating a stationary table saw is an inherently dangerous activity. The heightened dangers of operating such a machine freehand and without its safety features (blade guard, rip fence, or meter gage) is something that an average user is, or reasonably should be, aware. Plaintiff admitted that operating the table saw without its safety blade-guard enhanced the dangerous potential of the table saw, and yet, Plaintiff continued to operate the table saw without this safety and other available safety features for many years.

Aside from the open and obvious dangers associated with the freehand operation of a table saw, such action was specifically prohibited in the Defendants' Owner's Manual which Plaintiff concedes he read. See D.S.M.F., at ¶¶ 6, 14, 21, 24, and 35. Given the warnings contained in the Owner's Manual prohibiting the freehand operation, warning against the dangers of "kick backs," and requiring the use of different additional safety features when operating the table saw, see fn. 1, the Court does not see how more explicit warnings (either on the saw itself or in the Owner's Manual) could have prevented Plaintiff from acting as he did. Because the Court concludes that additional warnings against freehand operations would have been superfluous, and given the open and obvious danger of operating the machine in the manner the Plaintiff did, Defendants are entitled to summary judgment on Plaintiffs' failure to warn claims.

## V. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **denied** with respect to Plaintiffs' claims based on defective design, and **granted** with respect to Plaintiffs' negligence and strict product liability claims based on failure to warn. The negligence and strict product liability claims based on failure to

11

warn are **DISMISSED**.

**IT IS SO ORDERED.**

DATED:   August 8, 2006

                                              Thomas J. McAvoy
                                              Senior, U.S. District Judge